IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRANDY APPLE, individually and on behalf of a group of similarly-situated individuals, | ) ) ) ) | |
| Plaintiff | ) ) | Case No. |
| and | ) ) | JURY TRIAL DEMANDED |
| AMANDA SHEER, individually and on behalf of a group of similarly-situated individuals, | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | |
| VCG HOLDING CORP., | ) ) | |
| Registered Agent: Michael L. Ocello 1401 Mississippi Ave Bay 10 Sauget, IL 62201 | ) ) ) ) | |
| Defendant | ) ) | |

## CLASS ACTION COMPLAINT
## I. INTRODUCTION

1.      This is a class action brought by Plaintiffs Brandy Apple and

Amanda E. Sheer against Defendant VCG Holding Corp.  The Class that Plaintiffs seek

to represent is composed of female employees who, during the relevant time period, all

worked as exotic dancers for Defendant at nightclubs they operated, controlled and

dictated employment policies at in Illinois (the "Nightclubs").  All class members were

denied their fundamental rights under applicable state and federal wage and hour laws in

a similar and common way.  Specifically, Plaintiffs complains that Defendant

misclassified Plaintiffs and all other members of the Class as independent contractors, as

opposed to employees, at all times in which they worked as dancers at any of Defendant's

Nightclubs located in Illinois.  As a result, Defendant failed to pay Plaintiffs and all other members of the Class the minimum wages and other benefits that they were entitled to under federal and state law.  Additionally, Defendant engaged in unlawful tip splitting by requiring dancers in the Class to split and share gratuities given to them by patrons with the Nightclubs and employees, such as managers, doormen, and DJs.  Plaintiffs, therefore, bring this class action seeking damages, back pay, restitution, liquidated damages, applicable civil penalties, prejudgment interest, reasonable attorneys' fees and costs, declaratory and injunctive relief and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## II.  JURISDICTION & VENUE

2.     This Complaint alleges causes of action under the law of the United States, including the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA").  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.

3.     The Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332(d) ("CAFA").  Diversity of citizenship between the parties exists and the amount-in-controversy requirements under the above-referenced provisions are met.

4.     This action is also brought on behalf of certain subclasses, more fully defined herein, pursuant to 820 ILCS 115 ("Illinois Wage Payment and Collection Act" or "IWPCA") and 820 ILCS 105 ("Illinois Minimum Wage Law" or "IMWL").

5.     A substantial part of the events and conduct giving rise to the claims in this action occurred in this Judicial District.  The unlawful actions of Defendant occurred in the State of Illinois.

## III.  PARTIES & STANDING

6.      Plaintiff Brandy Apple ("Apple") is a resident of Missouri.  She worked as a female exotic dancer at various nightclubs wholly owned and operated by Defendant in Illinois during the Class Period and is a member of the Class.  Like the other Class members, when Apple worked at the VCG nightclubs, she was (1) misclassified as an independent contractor and as a result, was not paid any wages (and provided other benefits and rights) which she was entitled to as an employee; and (2) required to split tip income as described more fully below.

7.      Plaintiff Amanda Sheer is a resident of Missouri.  She worked as a female exotic dancer at the VCG-owned and operated PT's Centreville nightclub during the Class Period and is a member of the Class.  Like other Class members, when she worked at the PT Centreville nightclub in Centreville, Illinois, she was (1) misclassified as an independent contractor and as a result, was not paid any wages (and provided other benefits and rights), which she was entitled to as an employee; and, (2) required to split tip income as described more fully below.

8.      The Defendant in this matter is a business entity that controls the work of members of the Class that work or have worked at various clubs located in the state of Illinois.

9.      Defendant is a Colorado corporation with its principal place of business located in Colorado.  Defendant's resident agent for Illinois is Michael L. Ocello.  Ocello is also the President of Defendant.  The Chairman and Chief Executive Officer of Defendant is Troy H. Lowrie.

10.      The Defendant is owns and operates business establishments where live nude and semi-nude dance entertainment is presented to adult members of the general

3

public. Defendant maintains ownership, recruitment, management, and/or operational interests in multiple nightclubs featuring exotic dancing by Class members, including PT's Brooklyn, PT's Centreville, and PT's Sports (hereinafter referred to collectively as "Nightclubs").

11.     Each of the Nightclubs delegates its senior management functions to Defendant, including functions that affect the employment status, classification and treatment of dancers. While each Nightclub has a distinct business location where it operated and conducted business with the public, each Nightclub nevertheless maintains its principal corporate offices at Union Boulevard #540, Lakewood, Colorado 80228, the same location as Defendant's headquarters. Each Nightclub is wholly-owned by Defendant.

12.     At all relevant times Defendant employed all exotic dancers working in the Nightclubs, managed, directed and controlled the operations in each Nightclub, and dictated the common employment policies applicable in each Nightclub, including but not limited to the decisions: (1) to misclassify dancers as independent contractors, as opposed to employees; (2) to require that dancers split their table dance tips with Nightclubs; (3) to require that dancers further split their table dance tips with Nightclubs' managers, doormen, floor walkers, DJs and other employees who do not usually receive tips by paying "tip-outs;" (4) to not pay any dancers any wages; (5) to demand improper and unlawful payments from class members; (6) to adopt and implement employment policies which violate the Fair Labor Standards Act (FLSA), to adopt and implement improper and unlawful policies in violation of the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law, and/or other laws; and/or (7) to threated

retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee. Defendant and its principals created the common business model employed at each Nightclub regarding dancer classification and tip splitting to require that it continue to be employed.

### IV. GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

13.    The FLSA applied to Plaintiffs and the Class at all times in which they worked at Nightclubs.

14.    The IWPCA applied to Class members at all times during which they worked at Nightclubs.

15.    No exceptions to the application of the FLSA, IWPCA or IMWL apply to Plaintiffs and Class. For example, no Class member has ever been a professional or artist exempt from the provisions of these laws. The exotic dancing performed by Class members while working at the Nightclubs does not require invention, imagination or talent in a recognized field of artistic endeavor, and Class members have never been compensated by Defendants on a set salary, wage or fee basis. Rather, Class members' sole source of income while working at the Nightclubs have been tips given to them by patrons, (i.e., table dance tips and stage dance tips).

16.    At all relevant times, Plaintiffs and each member of the Class, defined below, were employees of Defendant under the FLSA, IWPCA, and IMWL. During the relevant time period hundreds of different women have worked as exotic dancers at the Nightclubs without being paid any minimum wages while also being denied the rights and benefits of an employee. Each Nightclub averages approximately 20-40 class members working on any given day.

17.     At relevant times, Defendant has been the employers of Plaintiffs and each member of the Class, defined below, under the FLSA, IWPCA and IMWL, and other applicable law.  Defendant permitted Class members to work.  Defendant directly or indirectly employed and exercised significant control over the wages, hours and working conditions of the exotic dancers in the Class.

18.     Throughout the relevant time period, Defendant's policies and procedures regarding the classification of all exotic dancers (including Plaintiffs) at the Nightclubs and treatment of dance tips were the same among all Nightclubs in all material respects. As a matter of common business policy, Defendant systematically misclassified Plaintiffs and all Class members as independent contractors, as opposed to employees. Defendant's classification of Plaintiffs as independent contractors was not due to any unique factor related to their employment or relationship with Defendant.  Rather, as a matter of common business policy, Defendant routinely misclassified all exotic dancers as independent contractors as opposed to employees.  All Nightclubs used the same or material identical contracts attempting to classify dancers as independent contractors and confirming these uniform employment policies and procedures.  As a result of this uniform misclassification, Plaintiffs and the members of the Class were not paid the minimum wages required under the FLSA, the IWPCA and IMWL, and therefore, suffered harm, injury, and incurred financial loss.

19.     Plaintiffs and members of the Class incurred financial loss, injury and damage as a result of Defendant's common practices misclassifying them as independent contractors and failing to pay them minimum wages in addition to the tips that they were given by patrons.  Plaintiffs' injury and financial loss was caused by Defendants'

application of those common policies in the same manner as they were applied to absent Class members.

20.     During the relevant time period, no Class member received any wages or other compensation from Defendant. Members of the Class generated their income solely through the tips received from customers when they performed exotic table, chair, couch, lap, and/or VIP room dances (hereinafter collectively referred to as "table dance tips").

21.     All monies Class members like Plaintiffs received from customers when they performed exotic dances were tips, not wages or service fees. Tips belong to the person they are given to. Table dance tips were given by patrons directly to dancers in the Class and therefore, belong to dancers in the Class, not Defendant.

22.     The full amount dancers in the Class are given by patrons in relation to exotic dances they perform are not taken into Defendants' gross receipts, with a portion then paid out to the dancers. Neither Defendants nor any of their affiliated companies issue W-2 forms, 1099 forms or any other documents to Class members indicating any amounts being paid from their gross receipts to Class members as wages.

23.     Plaintiffs and members of the Class are tipped employees as they are engaged in an occupation in which they customarily and regularly receive tips as described in IWPCA and IMWL.

24.     Defendant's misclassification of Plaintiffs and other Class members as independent contractors was designed to deny Class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to

Class member by customers, and done to enhance Defendant's profits at the expense of the Class.

25.     Defendant's misclassification of exotic dancers like Plaintiffs was willful. Defendant knew or should have known that Plaintiffs and the other dancers performing the same job functions were improperly misclassified as independent contractors.  For instance, in *Harrell v. Diamond A Entertainment, Inc.*, 992 F.Supp. 1343, 1347-48 (M.D. Fla. 1997) the United States District Court for the Middle District of Florida confirmed:

> Arrangements factually similar to the one in this case have been tested by federal courts in Texas, Indiana and Colorado.  See *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993) (whether dancer was "employee" under FLSA); *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379 (N.D. Ill. 1997) (whether dance fees were "tips" under FLSA); *Reich v. Priba Corp.*, 890 F.Supp 586 (N.D.Tex.1995) (whether dancer was "employee" under FLSA); *Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668 (N.D. Ill. 1994) (whether dance fees were "tips" under FLSA), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); *Martin v. Priba Corp.*, 1992 WL 486911 (N.D.Tex.1992) (whether dancer was "employee" under FLSA); *Martin v. Circle C Investments, Inc.*, 1991 WL 338239 (W.D. Tex. 1991); *Donovan v. Tavern Talent & Placements, Inc.*, 1986 WL 32746 (D. Colo. 1986) (whether "tips" could be used to offset completely the minimum wage requirement).  Without exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage.

26.     Employment is defined with "striking breadth" in the wage and hour laws. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26, 112 S.Ct. 1344, 1349-50 (1992).  The determining factor as to whether dancers like Plaintiffs are employees or independent contractors under FLSA or state law is not the dancer's election, subjective intent or any contract.  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA

8

and other wage and hour laws is the economic reality test. Under the economic reality

test, employee status turns on whether the individual is, as a matter of economic reality,

in business for herself and truly independent, or rather is economically dependent upon

finding employment in others.

27.     Any contract which attempts to have workers in the Class waive, limit or

abridge their statutory rights to be treated as an employee under FLSA is void,

unenforceable, unconscionable and contrary to public policy. Workers in the Class

cannot validly "elect" to be treated as employees or independent contractors under threat

of adverse treatment. Nor can workers in the Class agree to be paid less than the

minimum wage.

28.     Despite this, Defendant unfairly, unlawfully, fraudulently and

unconscionable attempt to coerce dancers in the Class to waive their FLSA and other

wage and hour rights and elect to be treated as independent contractors. Defendant

therein threatens to penalize and discriminate against dancers in the Class if they assert

their FLSA or IWPCA or IMWL rights such as through termination and the confiscation

of all table dance tips, among other adverse conditions and retaliations. Any such

retaliation based on the assertion of statutory rights under the wage and hour laws is

unlawful. 29 U.S.C. §215(a)(3).

29.     Under the applicable test, courts utilize several factors to determine

economic dependence and employment status. They are (i) the degree of control

exercised by the alleged employer, (ii) the relative investments of the alleged employer

and employee, (iii) the degree to which the employee's opportunity for profit and loss is

determined by the employer, (iv) the skill and initiative required in performing the job,

(v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

30.    The totality of circumstances surrounding the employment relationship between Defendant and the dancers in the Class working at the Nightclubs establishes economic dependence by the dancers on Defendants and employee status.  Here, as a matter of economic reality, Plaintiffs and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendant.  The dancers are not engaged in occupations or businesses distinct from that of Defendants.  Rather, their work is the basis for the Defendants' business.  Defendants obtain the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants.  Defendants retain pervasive control over the nightclub operation as a whole, and the dancer's duties are an integral part of the operation.

31.    Plaintiffs and other members of the Class do not exert control over a meaningful part of the nightclub business and do not stand as separate economic entities from Defendants.  Defendants exercise control over all aspects of the working relationship with Plaintiffs and the other dancers at the nightclubs.

32.    Class members' economic status in inextricably linked to those conditions over which Defendant has complete control.  Plaintiffs and the other dancers are completely dependent on the Nightclubs for their earnings.  The club controls all of the advertising and promotion without which dancers like Plaintiffs could not survive economically.  Moreover, Defendant creates and controls the atmosphere and surroundings at the Nightclubs, the existence of which dictates the flow of customers into

the club. The dancers have no control over the customer volume or the atmosphere at each of the nightclubs.

33.     Defendants employ guidelines and rules dictating the way in which dancers like Plaintiffs must conduct themselves while working at the Nightclubs. Defendants set the hours of operation; length of shifts dancers must work; the show times during which a dancer may perform; minimum table dance tips; determine the sequence in which a dancer may perform on stage during her stage rotation; the format and themes of dancers' performances (including their costuming and appearances); theme nights; conduct while at work (i.e., that they be on the floor as much as possible when not on stage and mingle with patrons in a manner which supports Defendant's general business plan); pay tip-splits; pay "tip-outs" to managers, doormen and other employees who do not normally receive tips from patrons; and all other terms and conditions of employment.

34.     Defendant requires that Plaintiffs and the other dancers in the Class schedule work shifts. Defendant requires that each shift worked by a dancer be of a minimum number of hours. Further Defendant requires dancers like Plaintiff to clock-in and clock-out (or otherwise check in or report) at the beginning and end of each shift. If late or absent for a shift, a dancer is subject to fine, penalty, or reprimand by Defendant. Once a shift starts a dancer, like Plaintiffs, are required to complete the shift and cannot leave early without penalty or reprimand.

35.     While working at the Nightclubs dancers like Plaintiffs perform exotic table, chair, couch, lap and/or VIP room dances for patrons offering them tips (referred to herein "table dance tips" or "tips"). Defendant, not the dancers, sets the minimum tip

amount that dancers must collect from patrons when performing exotic dances. Defendant announces the minimum tip amounts to patrons in the nightclub wishing to see table dances.

36.    Defendant dictates the manner and procedure in which table dance tips are collected from customers and tracked. Each time a dancer performs an exotic table dance for a patron and receives a table dance tip, the dancer is required to immediately account to Defendants for their time and any table dance tip given to them by the patron. Additionally, Defendant employs other employees such as doormen and floor walkers to watch dancers work, count private dances they perform, and record the amount of any table dance tips received. At the end of a work shift, dancers like Plaintiffs are required to clock out and account to Defendant for all dances performed for the patrons of the nightclub. Then, the dancer is required to pay a portion of each table dance tip given to them by patrons over to Defendant.

37.    The entire sum that a dancer receives from the patron in relation to the table dance is not given to Defendant (and/or the nightclubs) and taken into their gross receipts. Rather, the dancers keep their share of the payment under the tip share policy and only pay over to Defendant and the other nightclub the portion they demand. As a result, there is no pay out by Defendant to the dancer of any wage. Defendant (and/or the nightclubs) issue no 1099 forms, W-2 forms or other documents to any dancers showing any sums being paid to dancers as wages.

38.    Defendant establishes the split or percentage which each dancer is required to pay it for each type of dance they receive. In addition, per-dance amounts or "tip-outs" must be paid by dancers (e.g. approximately $1 for each dance) to the

nightclub manager, dance checkers, disk-jockey, bouncers/door staff and/or other employees as part of Defendant's tip-splitting policy.  Further, dancers are required to help Defendants sell a minimum amount of drinks to patrons during each work shift.

39.     Plaintiffs, like all other dancers, do not exercise the skill and initiative of a person in business for themselves.

40.     Plaintiffs, like all other dancers, are not required to have any specialized or unusual skills to work at the Nightclubs.  Prior dance experience is not required to perform at the Nightclubs.  Dancers are not required to attain a certain level of skill in order to work at the Nightclubs.  There are no dance seminars, no specialized training, no instruction booklets, and no choreography provided or required in order to work at any of the nightclubs.  Plaintiffs, like all other dancers, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors.  Dancers, like Plaintiffs, own no enterprises.  Dancers, like Plaintiffs, exercise no business management skills.  Dancers maintain no separate business structures or facilities.  Dancers exercise no control over customer volume or atmosphere at the Nightclubs.  Dancers do not actively participate in any effort to increase the nightclub's client base, enhance goodwill, or establish contracting possibilities.  The scope of the dancer's initiative is restricted to decisions involving what clothes to wear (within Defendant's guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor.

41.     Plaintiffs, like all other dancers, are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenues, as an independent contractor in business for themselves would.

42.     Plaintiffs' relative investment is minor when compared to the investment made by Defendants.

43.     Plaintiffs, like all other dancers, have made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of the Nightclubs.  All investment and risk capital is provided by Defendant.  Dancers' investment is limited to expenditures on costumes and make-up which they may choose to wear while working, and their own labor.  But for Defendant's provision of the lavish nightclub work environment the dancers would earn nothing.

44.     Defendant, not dancers like Plaintiff, manage all aspects fo the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.).  Defendant, not the dancers, take the true business risks for the Nightclubs.

45.     Dancers like Plaintiffs do not control the key determinants of profit and loss of a successful enterprise, including on-going business risk, inventory, payment of wages, business insurance, licenses, etc.

46.     Certain dancers in the Class have worked for significant periods of time, sometimes in excess of ten years.

47.     Dancers like Plaintiffs are essential to the success of the Nightclubs.

48.     The foregoing demonstrates that dancers in the Class like Plaintiffs are economically dependent on Defendant and subject to significant control by Defendant. Therefore, Plaintiffs were misclassified as independent contractors and should have been paid minimum wages at all times they worked at any of Defendant's nightclubs and

otherwise been afforded all rights and benefits of an employee under federal and state wage and hour laws.

## V.  DEFENDANT'S INTENT

49.     All actions and agreements by Defendant described herein were willful, intentional and not the result of mistake or inadvertence.

50.     Defendant were aware that the FLSA, IWPCA and IMWL applied to their operation of the Nightclubs at all relevant times and that under the economic realities test applicable to determining employment status under those laws the dancers were misclassified as independent contractors.  Defendant and their affiliated companies were aware of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged.  In the vast majority of those prior cases, exotic dancers working under conditions similar to those employed at the Nightclubs were determined to be employees under the wage and hour laws, not independent contractors.  Further, Defendant was aware, and on actual or constructive notice, that Illinois law rendered all table dance tips given to class members by patrons when working in the Nightclubs the dancer/class member's sole property, rendering Defendant's tip-share, rent and tip-out policies unlawful.  Despite being on notice of their violations, Defendants intentionally chose to continue to misclassify dancers like Plaintiffs, withhold payment of minimum wages and require dancers to split their tips with Defendant and their employees, in an effort to enhance their profits.  Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## VI.  INJURY AND DAMAGE

51.     Plaintiff and all Class members suffered injury, were harmed, incurred damage and financial loss as a result of Defendant's conduct complained of herein. Among other things, Plaintiffs and the Class were entitled to minimum wages and to retain all of the table dance tips and other tips they were given by patrons.  By failing to pay Plaintiffs and the Class minimum wages and interfering with their right to retain all of the table dance tips and other tips they were given by patrons, Defendant injured Plaintiffs and the members of the Class and caused them financial loss, harm, injury, and damage.

## VII. CLASS ALLEGATIONS

52.     Plaintiffs bring this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as to Counts 2 and 3.  Count 1, in contrast, is brought pursuant to 29 U.S.C. §216(b).

53.     In addition, Plaintiffs bring this action as aggrieved employees on behalf of themselves and other current former employees pursuant to IWPCA and IMWL.

54.     All requirements of Fed.R.Civ.P. 23 (a) and (b)(3) are satisfied.

55.     The Class to be certified against Defendant is defined as follows:

> All individuals, who at any time from January 18, 2004, through the present, worked as an exotic dancer at any of the Nightclubs, but were designated as an independent contractor and therefore, not paid any minimum wages.

(Referred to herein as the "Class"; the period from January 18, 2004, to the present is referred herein as the "Class Period").  Additionally, within the class, there are two subclasses:

> (a) Subclass A

16

"Subclass A" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at one or more of the Nightclubs owned by Defendant from the period from January 18, 2011, through the present.

(b) Subclass B

"Subclass B" consists of the following class members:

All individuals who performed as exotic dancers and who have provided nude, semi-nude, and/or bikini entertainment for customers at one or more of the Nightclubs owned by Defendant from the period from January 18, 2004, until and including January 17, 2011.

56.     The individuals in the Class and each subclass are so numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, Plaintiffs believe that the number of individuals who have worked as exotic dancers at each of the Nightclubs during the relevant time period but who were not paid any minimum wages exceeds 300 women.

57.     There are questions of law and fact common to the Class and each subclass that predominate over any questions solely affecting individual embers, including, but not limited to:

     a.   Whether Defendant violated the FLSA, IWPCA and IMWL, by classifying all exotic dancers at the Nightclubs as "independent contractors," as opposed to employees, and not paying them any minimum wages;

     b.   Whether the monies given to dancers by patrons when they perform table dances are gratuities;

17

c.  Whose owns the monies given to dancers when they perform table dances;

d.  Whether Defendant unlawfully required Class members to split their tips with Defendant and Defendant's employees;

e.  Whether Defendant failed to keep required employment records;

f.  The amount of damages, restitution and/or other relief (including all applicable civil penalties, liquidated damages and equitable relief) available to which Plaintiffs and the Class are entitled.

58.  Plaintiffs' claims are typical of those of the Class and each respective subclass.  Plaintiffs, like other members of the Class, were misclassified as independent contractors and denied their rights to wages and to keep all of their gratuities under the wage and hour laws.  The misclassification of Plaintiffs resulted from the implementation of a common business practice which affected all Class members in a similar way.  Plaintiffs challenge Defendant's business practices under legal theories common to all Class members.

59.  Plaintiffs and the undersigned counsel are adequate representatives of the Class.  Plaintiffs are members of the Class.  Given Plaintiffs' injuries and losses, Plaintiffs have the incentive and are committed to the prosecution of this action for the benefit of the Class.  Plaintiffs have no interests that are antagonistic to those of the Class or that would cause them to act adversely to the best interests of the Class.  Plaintiffs have retained counsel experienced in class action litigation.

60.  This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(1) and 23 (c)(4) because the prosecution of separate actions by individual members of the

Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

61.     This action is maintainable as a class action under Fed.R.Civ.P. 23(b)(3) because questions of law and fact common to the Class and each subclass predominate over any question affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

### FIRST CAUSE OF ACTION – VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages)
### (On Behalf of the Entire Class)

62.     Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein, unless inconsistent.

63.     At all relevant times Defendant employed all similarly situated dancers in the Class within the meaning of the FLSA.

64.     29 U.S.C. § 206 requires that Defendant pay all employees minimum wages for all hours worked.  29 U.S.C. § 206(a) provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
>
> (1) except as otherwise provided in this section, no less than--
>
> (A) $5.85 an hour, beginning on the 60th day after May 25, 2007;
> (B) $6.55 an hour, beginning 12 months after that 60th day; and
> (C) $7.25 an hour, beginning 24 months after that 60th day;

65.     29 U.S.C § 207(a) provides in pertinent part:

> ...no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at the rate of not less than one and one-half times the regular rate at which he is employed.

66.     Like other dancers working at the Nightclubs, Plaintiff was not paid the minimum wages set forth in 29 U.S.C. §206 or §207.  In fact, Plaintiffs and Class Members were paid no wages whatsoever.

67.     In addition to failing to pay any wages to Plaintiffs and Class Members, Defendant actually required Plaintiff and Class Members to pay others in order to work at Nightclubs.

68.     Defendant failed to pay dancers like Plaintiffs minimum wages throughout the relevant time period because it misclassified them as independent contractors.

69.     The amounts paid to exotic dancers, like Plaintiffs, by customers in relation to private table dances performed were tips, not wages.  Those monies were not the property of Defendants.  The entire amount collected from the customers in relation to table dances performed by exotic dancers were not made part of Defendants' gross receipts at any point.

70.     As a result, the amounts paid dancers like Plaintiffs by customers in relation to private table dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendant's obligation to pay minimum wages to its dancers. See e.g., *Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds 64 F.3d 316 (7th Cir. 1995); *Reich v. ABC/York-Estes Corp.*, 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

71.     Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. §203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. §203(m).

72.     Neither of these conditions was satisfied. Defendant did not inform dancers like Plaintiffs of the provisions of §3(m) of the FLSA, 29 U.S.C. §203(m); and Plaintiffs did not retain all the tips received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C §203(m). Defendant never notified any dancers that their table dance tips were being used to reduce the minimum wages otherwise due under FLSA's tip-credit provisions and that they were still due the reduced minimum wage for tipped employees. Rather, Defendant maintained that no dancers were ever due any minimum wages due to their classification as independent contractors and, in turn, were paid none.

73.     Further, Defendant's requirement that dancers like Plaintiffs split their tips and (i) pay Defendant a portion of all table dance tips as "rent"; and (ii) also pay a percentage of their tips as "tip-outs" to other employees who do not customarily receive tips, such as managers, checkers, disc-jockeys and bouncers/doormen/floor walkers, was not part of a valid tip pooling or tip sharing arrangement.

74.     Based on the foregoing, Plaintiffs and all similarly situated dancers are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§206 and 207 for all

periods in which she worked at the Nightclubs, along with all applicable penalties, liquidated damages, and other relief.

75.     Defendant's conduct in misclassifying dancers like Plaintiffs as independent contractors was intentional and willful and done to avoid paying minimum wages and other benefits that they were legally entitled to.

76.     The FLSA provides that a private civil action may be brought for the payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by an employee pursuant to 29 U.S.C. §§216(b) ("Any employer who violates the provisions of section 206 or section 27 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). Moreover, Plaintiffs may recover attorneys' fees and costs incurred in enforcing their rights pursuant 29 U.S.C. §216(b).

77.     Title 12 U.S.C. §211(c) provides in pertinent part:

(c) Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

78.     Title 29 C.F.R. §516.2 and 29 C.F.R. §825.500 further require that every employer shall maintain and preserve payroll or other records containing, without

limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

79.     Title 29 U.S.C §215(a)(5) provides in pertinent part:

> …[I]t shall be unlawful for any person-
> (5) to violate any of the provisions of section 211(c) of this title…

80.     To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiffs comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiffs damage.

81.     When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688, 66 S.Ct. 1187 (1946) is controlling.  That rule states:

> …where the employer's records are inaccurate or inadequate …an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

82.     The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and

precision of measurement that would be possible had he kept records in accordance with...the Act." Id.

83.     Based on the foregoing, Plaintiffs and all similarly situated dancers seek unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate, attorney's fees and costs, and all other costs, penalties and other relief allowed by law.

## SECOND CAUSE OF ACTION – VIOLATION OF ILLINOIS MINIMUM WAGE LAW

84.     Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

85.     At all relevant times, all members of the Class were employees of Defendant within the meaning of 820 ILCS 105/3(d) and any other applicable laws and regulations.

86.     At all relevant times, Defendant was an employer under Illinois law, and was considered an "employer" under 820 ILCS 105/3(c).

87.     Defendant controlled the workplace environment and imposed discipline, rules and working conditions on the dancers in the class in manners inconsistent with a true independent contractor relationship.  Many of these conditions are discussed above. Additionally, Defendant set additional rules and working conditions applicable to all dancers in the class including those requiring that the dancers wear certain types of outfits or costumes and work shifts of certain duration without providing applicable rest breaks or meal breaks required by law.

24

88.     Defendant failed to pay Plaintiffs and members of the Class required minimum wages for the time they spent working at the Nightclubs located in Illinois. Defendant paid no dancer in the class wages.  Instead, Defendant unlawfully charged dancers in the class money to work by taking a portion of their tips; charging "rent," "house-fees" or "stage fees;" requiring dancers to help sell beverages and other goods to patrons or to personally buy them from Defendant; and/or collecting fines and penalties, among other things.

89.     The Illinois Minimum Wage Law requires that all employees be paid minimum wages by their employers.  820 ILCS 105/4(a)(1) provides:

> ...on or after July 1, 2010 every employer shall pay to each of his or her employees who is 18 years of age or older in every occupation wages of not less than $8.25 per hour.

90.     Further, 820 ILCS 105/12(a) provides:

> If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid.

91.     The Illinois Minimum Wage Law allows an employer to reduce, but not avoid altogether, paying employees the full minimum wage when certain conditions are met.  However, Defendant does not meet the conditions required by 820 ILCS 105/4(a)(2)(c) because it required Plaintiffs and Class Members to return some of their tips, or share those tips with disc-jockeys, security employees, bartenders and others.

92.     All amounts paid to class members by customers in relation to dances, goods sold and other work performed while working at the Nightclubs located in Illinois

were tips and gratuities, not wages or service fees; belong solely to the class member and cannot be used to offset Defendant's obligation to pay them minimum wages.

93.     Defendant's requirement that some or all of its dancers sign a purported contract in which the dancer agrees to accept less than the statutorily-required minimum wage provides no defense for this cause of action.  820 ILCS 105/12(a) specifically provides that, "[a]ny agreement between the employee and the employer to work for less than such wage is no defense to such action."

94.     Defendant has failed to keep all records required by the Illinois Minimum Wage Law.

95.     Defendant has failed to post in its nightclubs notices required by the Illinois Minimum Wage Law.

96.     During the duration of their employment, and/or when class members' employment at the nightclubs was terminated they were not timely paid all wages due. As a result, additional penalties apply.

97.     As a result of Defendant's conduct described above, members of the Class were injured, damaged, harmed and incurred financial loss.

98.     Defendant failed to pay Plaintiffs, or any other member of the Class, any minimum hourly wages for their labor during the relevant time period.  Rather, Defendant systematically misclassified all dancers in the Class as independent contractors, as opposed to employees, so as to attempt to avoid paying members any wages and other benefits due employees.  All unpaid wages must now be paid to the Class, along with other relief appropriate under the circumstances.

99.     To the extent Defendant failed to maintain all records required by the aforementioned statutes and regulations, it also violated the applicable law causing Class Members further damage.

100.    To the extent Defendant failed to maintain all records required by the aforementioned statutes and regulations, it also violated the applicable law causing Class Members further damage.

101.    None of the provisions of the Illinois Minimum Wage Law was, or can be, contravened, set aside, abrogated, or waived by Class Members.

102.    To the extent Defendant failed to maintain complete records regarding each Class Member's employment, including hours worked and any deductions from wages, Defendants violated applicable law.

103.    As a result of the foregoing conduct, Plaintiffs seek on behalf of themselves and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; interest calculated at the highest legal rate, but in no event less than 2% per month for every month that the wages remain unpaid; all applicable penalties able to be recovered for them or for the state, and all other relief allowed by law.

## THIRD CAUSE OF ACTION – VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT

104.    Plaintiffs hereby incorporate all of the preceding paragraphs by reference as if fully set forth herein.

105.    At all relevant times, Plaintiffs and all members of the Class were employees of Defendant within the meaning of the Illinois Wage Payment and Collection Act (hereinafter "IWPCA").

106.    Defendant is an "employer" as defined in 820 ILCS 115/2.

107.    Each Plaintiff is an "employee" as that term is defined in 820 ILCS 115/2, and every class member is considered an "employee" under 820 ILCS 115/2.

108.    The IWPCA requires that every employer pay its employee wages due on a regular basis.  Specifically, 820 ILCS 115/3 provides that, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period."

109.    820 ILCS 115/4 provides that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

110.    Defendant failed to pay wages in a timely manner to Plaintiffs and Class Members.

111.    Defendant failed to pay wages to Plaintiff and Class Members on a semi-monthly basis, or on a more frequent basis.

112.    Defendant failed to pay wages to Plaintiffs and Class Members within 13 days after they became due.

113.    Deductions by employers from wages or final compensation are prohibited by 820 ILCS 115/9 unless the deductions fall within one of the enumerated categories in that section.

114.    Defendant has failed and refused to pay the entirety of wages due to Plaintiffs and Class Members, and have effectively deducted the entirety of the wages due. Any deduction or deductions claimed by Plaintiff are impermissible in that they do not fall within one of the enumerated categories in 820 ILCS 115/9.

115.    820 ILCS 115/10 requires that employers notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. That section further requires that every employer:

> ...post and keep posted at each regular place of business in a position easily accessible to all employees one or more notices indicating the regular paydays and the place and time for payment of his employees, and on forms supplied from time to time by the Department of Labor containing a copy or summary of the provisions of [the IWPCA].

116.    Defendant failed at all times during the class period to provide notices required by the IWPCA.

117.    Defendant failed at all times during the class period to rate of pay to which they were entitled. In fact, Defendant made and continues to make various self-serving statements contravening their statutory duties. E.g., Defendant incorrectly advises all dancers that they are "private contractors" and "not employees."

118.    The IWPCA authorizes the bringing of a class action for violations of the IWPCA. See 820 ILCS 115/11. In addition, 820 ILCS 115/14 provides that:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but no both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

29

119.     To date, all wages due to Plaintiffs and Class Members, from Defendant, remained unpaid and outstanding.

120.     Defendant violated the aforementioned laws by requiring Plaintiffs and Class Members: (a) to pay Defendant's rent or other real estate costs, house-fees, or other amounts, (b) to pay Defendant a portion of each table dance tip received from patrons; (c) to pay tip-outs to Defendants' employees who do not normally receive tips (including managers, doormen, floor walkers and disk-jockeys); (d) to sell goods (drinks, novelties) for Defendant as part of a dance and pay Defendant money; (e) to pay Defendant for drinks not sold to patrons.

121.     Based on the foregoing, all members of the class were injured, damaged and incurred financial loss as a result of the conduct of Defendants.

122.     As a result of the foregoing, Plaintiffs seek on behalf of themselves and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time–period, reimbursement of any base rent, liquidated damages if permitted by law, interest at the rate of 2% per month, legal costs and attorney fees, plus all other restitution, penalties, and other relief permitted by law.

## XI.  JURY DEMAND

Plaintiffs reserve their rights to and hereby request a trial by jury on all matters so triable.

## XII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of the Class and each respective subclass, pray for an order for relief as follows:

1.      That Defendant be found liable to Plaintiffs and the Class and each subclass;

2.      For a declaration that Defendant violated the rights of Plaintiffs and the Class under the FLSA, Illinois Minimum Wage Law, Illinois Wage Payment and Collection, and/or any other applicable law;

3.      For nominal damages;

4.      For compensatory and actual damages;

5.      For restitution of all monies due Plaintiffs and the Class;

6.      For all backpay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiffs and members of the Class to Defendant and their employees;

7.      For all statutory damages, liquidated damages, penalties and/or other relief allowed by federal and state wage and hour statutes and regulations and/or other laws;

8.      For accrued interest;

9.      For applicable penalties due the class or state;

10.     For an order certifying Count One under 29 U.S.C. §216(b), and separately certifying the Class and each subclass under Fed.R.Civ.P. 23 as to Counts Two and Three;

11.     For costs of suit and expenses incurred herein, including reasonable attorneys' fees and costs allowed under relevant provision of law including, but not limited to, those allowed under 29 U.S.C. §216(b), 820 ILCS 115/1, et seq. (Illinois Wage Payment and Collection Act), and 820 ILCS 105/1, et seq. (Minimum Wage Law); and

12.     For any and all other relief that the Court may deem just, proper and

equitable in the circumstances.

Dated: January 31, 2014                          Respectfully submitted,
                                                 THE SMITH LAW FIRM, LLC


                                                 _____
                                                 Neil Smith, Esq.
                                                 IL Pro Hac Vice Adm. (Pending)
                                                 MO Bar No. 56789
                                                 E.D.MO Bar No. 56789MO
                                                 225 S. Meramec, Suite 532
                                                 St. Louis, Missouri 63105
                                                 Phone (314) 725-4400
                                                 Cellular (314) 974-3266
                                                 neil@smithlawfirm.com